RUCKER, J.,
dissenting.
In Galloway v. State, this Court evaluated the circumstances under which a defendant is entitled to a verdict of not guilty by reason of insanity despite a fact-finder’s verdict to the contrary. See 938 N.E.2d 699 (Ind.2010). Because today’s opinion retreats from and thus undermines Galloway, I respectfully dissent.
Galloway is straightforward:
Where there is no conflict among the expert opinions that the defendant was insane at the time of the offense, there must be other evidence of probative value from which a conflicting inference of sanity can be drawn. Such probative evidence is usually in the form of lay opinion testimony that conflicts with the experts or demeanor evidence that, when considered in light of the other evidence, permits a reasonable inference of sanity to be drawn.
Id. at 712 (internal citation omitted). The majority of course acknowledges Galloway, but contends the facts here are distinguishable. For example the majority points out that unlike the defendant in Galloway here the defendant “had seemingly been coping better with his mental illness over the past several years,” op. at 1076, and the defendant here “had never *1083 met the individuals he shot at, and nothing in the record indicates that he had ever attacked any other individuals due to delusions regarding his believed involvement in the military or CIA.” Id. at 1076. According to the majority, “[m]ost significantly, Myers did nothing during the incident itself that explicitly demonstrated he was suffering from a delusion at that time, while the defendant in Galloway shouted out that he believed his grandmother was the devil.” Id. While these certainly are distinctions, they are in my view distinctions without a difference; and more importantly they were not the basis on which Galloway was decided. Instead the Court made clear that where there is no conflict among the expert opinions as to the defendant’s insanity then there must be other evidence either from “lay opinion testimony that conflicts with the experts or demeanor evidence.” Galloway, 938 N.E.2d at 712.
Here the majority acknowledges, “the experts who conducted psychological evaluations of Myers unanimously agreed that Myers’ mental illness made him incapable of understanding the wrongfulness of his conduct at the time of the offense.” Op. at 1075. And except for Myers’ mother who said the day before the shootings Myers was “not in his right mind,” id. (quoting Tr. at 458), there was no other lay or expert testimony that gave an opinion as to Myers’ mental state at the time of the offense. As such there must then exist “other evidence of probative value from which a conflicting inference of sanity can be drawn.” Galloway, 938 N.E.2d at 712. And the only other evidence left in this case is that of demeanor. As the Galloway Court noted “[e]ven where there is no conflict among the experts and the lay witnesses, a finding that a defendant was sane at the time of the crime still may be sustained by probative demeanor evidence from which a conflicting inference of sanity may be drawn.” Id. (emphasis added). We observed, “[djemeanor is useful because a defendant’s behavior before, during, and after a crime may be more indicative of actual mental health at [the] time of the crime than mental exams conducted weeks or months later.” Id. (alteration in original) (internal citations and quotations omitted).
Here, while not saying so in express terms the majority appears to rely on such evidence pointing out for example the testimony of multiple witnesses describing how the incident unfolded. See op. at 1076-78. However Galloway teaches:
Although demeanor evidence often is useful, there are limits to its probative value. First, demeanor evidence is of more limited value when the defendant has a long history of mental illness with psychosis.... The proposition that a jury may infer that a person’s actions before and after a crime are indicative of his actual mental health at the time of the crime is logical when dealing with a defendant who is not prone to delusional or hallucinogenic episodes. However, when a defendant has a serious and well-documented mental disorder, such as schizophrenia, one that causes him to see, hear, and believe realities that do not exist, such logic collapses....
938 N.E.2d at 713 (internal quotations omitted). The same is true in this case. Myers like Galloway has a long mental illness history of paranoid schizophrenia. As one of the experts summed up in his report: “Based on Mr. Myers [sic] documented history of schizophrenic symptoms, his history of thought disorder, hallucinations and delusions, and his symptom pattern on the day of the incidents in question, it is this evaluator’s clinical opinion that Mr. Myers was suffering from a mental health condition at the time of his offenses and that mental health condition (schizophrenia) incapacitated his under *1084 standing of right and wrong and his ability to control his actions.” App. at 235; see also Tr. at 528. All other experts presented similar evaluations.
Because I can discern no appreciable difference between the facts in this case and those in Galloway, I agree with my colleagues on the Court of Appeals that “the jury clearly erred in rejecting Myers’s insanity defense.” Myers v. State, No. 76A03-1305-CR-173, 2014 WL 1478844, at *10 (Ind.Ct.App. Apr.14, 2014). Accordingly I would reverse Myers’ four Class A felony attempted murder convictions.[1]

. I also note the observations of my Court of Appeals colleagues: “Myers has been and remains institutionalized in a secure facility within Indiana’s mental health system. Unless new psychotropic medications sufficient to treat his serious mental illness are developed, he will likely remain institutionalized for the rest of his life.” Myers, 2014 WL 1478844, at *5 n. 1.